UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                          Plaintiff,            Civil Action No. 18-cv-12021
                                                   Honorable Paul D. Borman
          v.                             Magistrate Judge David R. Grand

SIXTY THOUSAND TWENTY DOLLARS
($60,020.00) IN U.S. CURRENCY,

                         Defendant *in Rem*.

_____/

## REPORT AND RECOMMENDATION TO DENY
## CLAIMANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT [15]

I.      **REPORT**

      Before the Court is Claimant Thomas Graves's ("Graves") Motion to Set Aside Default Judgment and Final Order of Forfeiture Against Claimant Graves, filed on November 12, 2018. (Doc. #15).  The United States of America filed a response to this motion on November 26, 2018. (Doc. #16).  Graves did not file a reply.  This matter has been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Doc. #17).  For the reasons cited below, the Court **RECOMMENDS** that Graves's motion **(Doc. #15)** be **DENIED**.

II.     **RECOMMENDATION**

      **A.**     **Background**

      According to the United States' Complaint for Forfeiture, on February 3, 2018, Graves had traveled from Michigan to Toledo, Ohio to pick up money related to narcotics distribution.  (Doc. #1 at 3).  When he returned into Michigan, an officer stopped him for driving over the speed limit.  (*Id.*)  The officer smelled marijuana emanating from Graves's vehicle.  (*Id.* at 4).  Ultimately, the officer searched the vehicle and discovered a zip-lock style plastic bag containing $60,020.00.  (*Id.*

at 4-5).  A narcotics K-9 gave a positive indication for narcotic odor on the bag containing the cash.  (*Id.* at 5).  The K-9 also gave a positive indication for the car's armrest, which was found to contain the ends of burnt marijuana cigarettes.  (*Id.*).  When asked about the money, Graves told the officer that he bought and sold houses in Detroit, and that the money belonged to his "friend in Toledo" who was an "investor."  (*Id.* at 6).[1]  However, Graves refused to identify the "investor."  (*Id.*).  The money was seized as suspected proceeds of drug trafficking, and Graves was released.  (*Id.*).

On March 3, 2018, the Drug Enforcement Administration sent a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings ("DEA Notice") to Graves at his home, 19941 Steel St. in Detroit, Michigan, informing him as to how he could contest the forfeiture of the $60,020.00.  (Doc. #16-2).  Graves followed the DEA Notice instructions by filling out the Seized Asset Claim Form and mailing it to the DEA by the April 3, 2018 deadline.  (*Id.*)  Graves listed 19941 Steel St. as his address on the Seized Asset Claim Form and as the return address for the package.  (Doc. #16-3).

On June 27, 2018, the United States filed its Complaint for Forfeiture seeking forfeiture of the $60,020.00 seized from Graves's vehicle.  (Doc. #1).  On July 2, 2018, the United States served its Complaint on Graves at 19941 Steel St. via regular mail and attempted to serve him there via

---

[1] Despite telling the officer that the money belonged to his "investor" "friend in Toledo," (Doc. #1 at 6), in the Seized Asset Claim Form he returned to the DEA, Graves alleged that the money belonged to him.  (Doc. 15-3).  Additionally, Graves has provided an affidavit in which he avers that the $60,020.00 in cash "belonged to [him]," and that "[he has] documentation and proof that the money was legitimately acquired from insurance proceeds and other sources."  (Doc. 15-2, ¶¶ 8-9).  But the only "evidence" Graves proffers in support of this are two bank statements from late 2011 (Doc. #16-3).  These statements only show the account's balance as of that time and have no apparent relevance as to Graves's possession of $60,020.00 in cash on February 3, 2018.

certified mail.  (Docs. #3, #6-2).[2]  The regular mailing was not returned to the government, and as discussed below, Graves does not contend that he did not receive this mailing.  (Doc. #6 at ¶5).  However, according to an affidavit proffered by the United States, the attempted delivery of the certified mail package to Graves at 19941 Steel St. was unsuccessful; delivery was attempted on both July 5 and 10, 2018, but postal employees were unable to obtain a signature on either day and thus left notices with instructions for Graves to contact the post office to retrieve the mail.  (Doc. #16-4).  On July 17, 2018, after Graves had failed to retrieve the certified mail package, it was returned to the United States marked "Return to Sender."  (Doc. #6-2).

Graves never filed a claim in response to the Complaint (Doc. #6 at 3),[3] leading the United States to file a request for Entry of Default on October 1, 2018 (Doc. #5), which was granted on October 2, 2018.  (Doc. #7).  On October 3, 2018, the United States filed a Motion for Entry of Default Judgment and Final Order of Forfeiture Against All Parties.  (Doc. #8).  That same day, the United States served Graves at 19941 Steel St. by regular mail and attempted service via certified mail with the Request to Clerk for Entry of Default Against All Interested Parties, Declaration of Linda Aouate in Support of Request to Clerk for Entry of Default Against All Interested Parties, Clerk's Entry of Default, Motion for Entry of Default Judgment and Brief in Support, Affidavit of Majority, and Proposed Default Judgment in Favor of Plaintiff and Final Order of Forfeiture.  (Doc. #10).  The District Court granted the United States' motion for default judgment on October 3, 2018 (Doc. #11), and service was conducted via regular mail and attempted via certified mail to Graves's 19941 Steele St. address on October 4, 2018.  (Doc. #12).

---

[2] The government also served Marion Louise Seymour, the registered owner of the vehicle Graves was driving when the money was seized, by regular and certified mail.  (Docs. #3, #6-2).  Ms. Seymour is apparently Graves's aunt, as he indicates in his motion that he "was driving a car which belonged to his aunt" at the time of the seizure.  (Doc. #15 at 8).

[3] Ms. Seymour also failed to file a claim in response to the Complaint.  (Doc. #6 at 3).

On November 12, 2018, Graves filed the instant Motion to Set Aside Default Judgment and Final Order of Forfeiture Against Claimant Graves.  (Doc. #15).  In an affidavit supporting his motion, Graves avers that although 19941 Steel Street is his "principal place of residence" (and the address he provided to the DEA in the Seized Asset Claim Form), during the summer months he resides on his boat, which is docked at KAM marina in Detroit.  (Doc. #15-2 at ¶ 5).  Graves further states that he "began living full-time on his boat from late April 2018 until October 24, 2018."  (*Id.* at ¶ 6).  Graves's motion and affidavit in support are not entirely clear and, in some ways, contradict each other.  In his motion, Graves insinuates that he visited various post offices in an attempt to retrieve the *July 2018* certified mail which contained the *Complaint*.  (Doc. #15 at 8-9, 15) ("On or about July 2, 2018 . . . the government attempted to serve Claimant with its Complaint []. . . . Claimant received the notice of the attempted service . . . [and] went to his *local* post office . . .  Claimant made a good faith attempt to acquire the registered mail containing the Complaint []") (emphasis in original).  While Graves cites to his affidavit in support of these assertions, in reality, his affidavit makes no mention of him attempting to retrieve the *July 2018* certified mail containing the Complaint, and instead indicates only that he attempted to retrieve the *October 2018* certified mail, which contained the government's *default judgment papers*. (Doc. #15-2 at ¶¶ 12-15) ("Sometime on or about October 5, 2018 I received a registered mail notice from the post office and proceeded to obtain **that mail**.") (Emphasis added).  And, importantly, nowhere in Graves's motion papers does he allege that he did not receive the Complaint, Warrant, and Notice that were sent to him via *regular* U.S. mail in July 2018.

Graves now moves to set aside the October 3, 2018 default judgment pursuant to Fed. R. Civ. P. 60(b)(1) and (6), arguing that "this case evidences excusable neglect in addition to other reasons justifying the requested relief."  (Doc. #15 at 10).  For the reasons discussed below,

Graves's motion lacks merit and should be denied.

      **B.**    **Analysis**

      *1.*    *The Government Properly Served Graves at 19941 Steel Street*

Graves does not explicitly argue that service of the Complaint was improper or ineffective, but his briefing almost implies a request that the Court reach this conclusion.  (Doc. #15 at 15-16). Any such argument lacks merit.  While Graves may not have been properly served under Federal Rule of Civil Procedure 4, the government unquestionably satisfied the service and notice requirements of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules") G(4) by sending the Complaint via regular mail, certified mail, and by posting notice on the appropriate governmental website.  (Docs. #3 at 1, #4 at 1).

As the Sixth Circuit has explained:

> [u]nder the Supplemental Rules, the government does not have to comply with the formal service of process provisions of Federal Rule of Civil Procedure 4 when providing notice of forfeiture to potential claimants.  This is because potential claimants are not defendants in an *in rem* action, the seized objects or assets are.  Instead, all that is required is that the government provide notice of the action "to any person who reasonably appears to be a potential claimant on the facts known to the government ... by means reasonably calculated to reach the potential claimant."  Fed.R.Civ.P. Supp. R. G(4)(b).

*United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 320 n.1 (6th Cir. 2010).  Supplemental Rules G(4)(b)(iii)(A) and (E) require the government to send notice "by means reasonably calculated to reach the potential claimant" and "to the last address that [the] person gave to the agency that seized the property."[4]  When determining which actions demonstrate properly served

---

[4] When the property at issue in a forfeiture action is worth more than $1,000 (as was the case here), Supplemental Rule G(4)(a) also requires the government to provide separate "notice" of the forfeiture action, and provides that the government can do so by, *inter alia*, "posting a notice on an official internet government forfeiture site for at least 30 consecutive days."  Supplemental Rules G(4)(a)(iv)(C).  There is no dispute that the government met this requirement here.  (Doc. #4).

notice, the Supreme Court has said that when the sending party's efforts were "reasonably calculated" to achieve notice, the government has met its burden.  *Dusenbery v. United States*, 534 U.S. 161, 170 (2002).

Here, Graves provided the DEA with 19941 Steel St. as his address despite knowing that the government was preparing to file a forfeiture complaint against the $60,020, and despite knowing that he was soon going to be moving to his houseboat at KAM marina for the summer. (Doc. #15-2 ¶¶ 2, 5).  And, although the July 2018 certified mail containing the government's Complaint was returned to its sender – the government (Doc. #16-4) – Graves does not dispute the government's assertion that the regular U.S. mail containing that same Complaint was not returned.  All of this establishes the government's compliance with the Supplemental Rules' service requirements – Graves was properly served at 19941 Steel St. in July 2018.

   2.   *Graves's Failure to Respond to the Government's Complaint Was Not Due to Excusable Neglect or Any Other Justifiable Reason*

In light of the government's proper service, Graves's instant motion should be denied because he has failed to demonstrate that his failure to respond to the Complaint was the result of excusable neglect.[5]  Fed. R. Civ. P. 55(c) provides that a default judgment may be set aside in accordance with Fed. R. Civ. P. 60(b).  When "considering a motion to set aside entry of a judgment by default a district court must apply Rule 60(b) 'equitably and liberally ... to achieve substantial justice.'"  *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 844-45 (6th Cir. 1983) (quoting *Blois v. Friday*, 612 F.2d 938, 940 (5th Cir.1980) (per curiam)).  Courts must recognize that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases."  *United Coin*, 705 F.2d at 845.  But relief from a default judgment "is

---

[5] The government also argues that Graves lacks standing to challenge the default judgment in this case.  Because the Court is recommending denying Graves's instant motion on other grounds, it declines to address this standing issue.

circumscribed by public policy favoring finality of judgments and termination of litigation." *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). Additionally, when a claimant is seeking to set aside a default judgment, "the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry." *Id.*

Rule 60(b) provides six reasons a default judgment may be set aside, including, in relevant part, "(1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." When deciding if relief is warranted under Rule 60(b), "three factors are relevant: (1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense." *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003). The party seeking relief must first demonstrate that the default was not due to his own culpable conduct before turning to the other two factors. *See Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002) ("[A] party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct."). Culpability is understood based on the terms of Rule 60(b)(1), "mistake, inadvertence, surprise, or excusable neglect." *See Waifersong,* 976 F.2d at 292. The Supreme Court defined excusable neglect to "encompass situations in which the failure to comply with a filing deadline is attributable to negligence," but it has also stated that determining what is considered excusable "is at bottom an equitable" determination. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394-95 (1993).

Excusable neglect is usually not found when "a judgment [is] entered for failure to answer in the time permitted." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2858 (3d ed. 2018) (citing cases); *see also Tri-Corner Investments LLC v. First Def. Int'l Grp., Inc.*, 361 F. App'x 629, 632 (6th Cir. 2010) ("[F]ailure to answer the complaint was not due to

7

excusable neglect.").    Additionally, the Sixth Circuit has "held that gross carelessness or inadvertent conduct that results in judgment will not give rise to a successful claim of excusable neglect if the facts demonstrate a lack of diligence." *Yeschick v. Mineta*, 675 F.3d 622, 631 (6th Cir. 2012).  In *Yeschick*, the court did not find excusable neglect because the plaintiff's counsel failed to update his email address and was aware that he was not receiving notice of filings that were expected in the case. *Id*. at 631.  In *Tri-Corner Investments*, the court did not find excusable neglect because the party seeking relief failed to explain why mail went unread for long periods of time when the mail procedure was within the party's control. *See Tri-Corner Investments*, 361 F. App'x at 632.

Based on Graves's receipt of the DEA Notice (Doc. #16-2) and his return of the Seized Asset Claim Form (Doc. #16-3) to the DEA on April 2, 2018, Graves knew that forfeiture proceedings would be commencing soon, and that mail regarding that matter would be sent to the address he provided the government.  Graves also knew that he was about to take up his summer residence on his houseboat.  Nevertheless, Graves repeatedly provided 19941 Steel St. as the address where he could be reached, and failed to explain why he was unable to check his mail at 19941 Steel St. while he was living on his boat from April 2018 through October 24, 2018.  (Doc. #15-2).  And, as noted above, while it is undisputed that Graves did not receive the Complaint that the government attempted to serve on him by certified mail in July 2018, Graves does not deny receiving the Complaint sent to him via regular U.S. mail at that same time.  Indeed, while the former mailing was returned to the government, the latter was not.  (Doc. #6 at ¶ 5).  Whether Graves actually took physical possession of the July 2018 regular mail envelope containing the Complaint or not, his failure to respond to the Complaint is not excusable neglect, but rather the

result of his own conduct and lack of diligence.[6]

Graves also argues that the default judgment should be set aside pursuant to Fed. R. Civ. P. 60(b)(6), but "courts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity mandate relief.'"   *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990)).   And, Rule 60(b)(6) must apply "only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present."   *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007).   Graves does not present an unusual or extreme situation, and instead relies solely on his excusable neglect argument.   Thus, Rule 60(b)(6) does not aid his request to set aside the default judgment.

### III.   CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Graves's Motion to Set Aside Default Judgment **(Doc. #15)** be **DENIED**.

Dated: April 24, 2019                         s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                          United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).   Failure to file specific objections

---

[6] Graves's culpability negates this Court's need to address the Sixth Circuit's other two factors, prejudice to the government that would be caused by granting Graves's instant motion, and whether Graves has shown he has a meritorious defense.

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager